UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
MINERVA BOURDIER,

                Plaintiff,

           - against -

ANDREW SAUL, Commissioner of Social
Security,[1]

                Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-205 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Minerva Bourdier brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the decision made by the Commissioner of the Social Security Administration ("SSA") denying her claim for Social Security Disability Insurance Benefits ("DIB"). Before the Court are the parties' cross-motions for judgment on the pleadings. Plaintiff seeks a finding that her mental impairments are severe, and remand of this matter for further administrative proceedings. The Commissioner asks the Court to affirm the denial of Plaintiff's claim. For the reasons that follow, the Court denies Plaintiff's motion for judgment on the pleadings and grants the Commissioner's motion.

---

[1] Andrew Saul became Commissioner of the Social Security Administration on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is substituted as Defendant in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is respectfully directed to update the docket accordingly.

1

## BACKGROUND

**I.      Procedural History**

On December 22, 2015, Plaintiff filed an application for DIB, alleging disability commencing on September 4, 2015. (Administrative Transcript ("Tr."),[2] Dkt. 12, at 31, 173–76.) On April 22, 2016, Plaintiff's application was initially denied. (*Id.* at 31, 105–09.) Plaintiff then filed a request for a hearing before an administrative law judge ("ALJ"). (*Id.* at 113–14.) On March 28, 2018, Plaintiff appeared with counsel before ALJ Timothy G. Stueve. (*Id.* at 61–82.) In a decision dated May 11, 2018, the ALJ determined that Plaintiff was not disabled under the Social Security Act (the "Act") and was not eligible for the benefits for which she had applied. (*Id.* at 28–46.) On November 13, 2018, the ALJ's decision became final when the Appeals Council of the SSA's Office of Disability Adjudication and Review denied Plaintiff's request for review of the decision. (*Id.* at 1–7.) Thereafter, Plaintiff timely[3] commenced this action.

---

[2] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript (appearing in the lower right corner of each page) and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

[3] According to Title 42, United States Code, Section 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42. U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on November 18, 2018, and Plaintiff filed the instant action on January 10, 2019—53 days later. (*See generally* Complaint, Dkt. 1.)

## II. The ALJ Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled. In this case, the ALJ found that Plaintiff suffers from the following severe impairments: "polysubstance abuse in remission, chronic obstructive pulmonary disease (COPD), DeQuervain's Tenosynovitis[4] with early osteoarthritis of the bilateral wrists, a mild degenerative disc disease of the cervical [spine] with left-sided cervical stenosis, plantar fasciitis, and a left heel calcaneal heel spur." (Tr. at 33.) The ALJ determined that Plaintiff's humerus fracture, depression and anxiety, and post-traumatic stress disorder ("PTSD") were not severe impairments. (*Id.* at 33–35.) The ALJ then progressed to the third step and determined that none of Plaintiff's impairments met or medically equaled "the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (*Id.* at 35.) Moving to the

---

[4] This condition is the "inflammation of the tendons of the first dorsal compartment of the wrist[.]" *See de Quervain tenosynovitis*, STEDMAN'S MEDICAL DICTIONARY 902190.

3

fourth step, the ALJ found that Plaintiff maintained the residual functional capacity ("RFC")[5] to perform

> light work[6] as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds. She could frequently balance on level surfaces, and occasionally stoop, kneel, crouch, and crawl. She could frequently handle and finger, bilaterally.

(*Id.*) Based upon the RFC finding, the ALJ determined that Plaintiff was capable of performing her past relevant work as a bus monitor, as generally performed. (*Id.* at 40.) The ALJ accordingly concluded that Plaintiff was not disabled. (*Id.* at 40–41.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (internal quotation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as

---

[5] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

[6] According to the applicable regulation,

[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation and alterations omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation omitted). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76, 178 n.3 (2d Cir. 2013) (noting that "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the court] to glean the rationale of an ALJ's decision" (internal quotation omitted)). Ultimately, the reviewing court "defer[s] to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld," *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

**DISCUSSION**

Plaintiff argues that the ALJ's RFC determination with respect to Plaintiff's mental impairments[7] is not supported by substantial evidence and does not properly apply the relevant legal standards. (Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Mot."), Dkt. 13, 12–15.) Specifically, Plaintiff maintains that the ALJ erred by improperly concluding that Plaintiff's mental impairments were not severe (*id.* at 12–13), and by improperly weighing the opinions of

---

[7] Of note, Plaintiff does not challenge the ALJ's RFC determination with respect to any of her physical impairments and those impairments deemed severe by the ALJ. (*See* Pl.'s Mot., Dkt. 13, 12–15.)

5

Plaintiff's treating therapist, the consultative examiner, and a state agency consultant in assessing Plaintiff's mental impairments (*id.* at 14–15).

## I. Severity Determination with Respect to Mental Impairments

At step two of the five-step inquiry, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments that "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521(a). A claimant's ability to do basic work activities refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.922(b). "The evaluation of mental impairments follows a 'special technique' pursuant to 20 C.F.R. § 404.1520a." *Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *17 (E.D.N.Y. Sept. 28, 2017) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). This technique requires that the ALJ "rate the degree of a claimant's functional limitation resulting from the impairment(s) in . . . four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation." *Id.* (quoting *Hernandez v. Astrue*, 814 F. Supp. 2d 168, 180–81 (E.D.N.Y. 2011)); *see also* 20 C.F.R. §§ 404.1520a(b)–(c), 416.920a(b)–(c); 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(A)(2)(b). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' . . . ." *Kohler*, 546 F.3d at 266. The ALJ "must" incorporate findings with respect to each function area in his decision regarding mental impairments. 20 C.F.R. § 404.1520a(e)(4).

The severity assessment at the second step is a threshold matter limited to screening out *de minimis* claims. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 17 (2d Cir. 2012) (summary order) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). As such, "[a] finding of 'not severe'

should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Mezzacappa v. Astrue*, 749 F. Supp. 2d 192, 205 (S.D.N.Y. 2010) (quoting *Rosario v. Apfel*, No. 97-CV-5759 (EHN), 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999)). An ALJ's erroneous finding that an impairment is "not severe" is not necessarily fatal error, for "[w]here an ALJ excludes certain impairments from the list of severe impairments at the second step, any such error is harmless where the ALJ identifies other severe impairments such that the analysis proceeds and the ALJ considers the effects of the omitted impairments during subsequent steps." *Calixte v. Colvin*, No. 14-CV-5654 (MKB), 2016 WL 1306533, at *23 (E.D.N.Y. Mar. 31, 2016) (collecting cases); *compare O'Connell v. Colvin*, 558 F. App'x 63, 65 (2d Cir. 2014) (summary order) (finding only harmless error where ALJ determined that claimant's knee injury was a non-severe impairment and, upon identifying other severe impairments, considered the knee injury in subsequent steps), *with Parker-Grose*, 462 F. App'x at 18 (finding harmful error where ALJ determined that plaintiff's depression was non-severe and did not consider it in subsequent steps).

Here, at step two, the ALJ concluded that "[t]he claimant's medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (Tr. at 34.) In arriving at this conclusion, the ALJ properly considered the requisite "four broad areas of mental functioning" by examining Plaintiff's 2016 Function Report, psychiatry records, and records from Plaintiff's treating social worker. (*Id.*) The ALJ then considered Plaintiff's mental impairments and the evidence thereof again, as part of the RFC determination. (*See id.* at 35–36, 38–39.) Accordingly, the Court finds that the ALJ's conclusion that Plaintiff's mental impairments did not meet the requisite *de minimis* level of severity, even if

7

erroneous, was harmless because the ALJ considered Plaintiff's mental impairments as part of the RFC determination.

## II. Substantial Evidence

Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ improperly afforded "little weight" to the opinions of Plaintiff's consultative examiner and treating therapist, and did not adequately explain the weight that he afforded to the opinion of the state agency consultant. (Pl.'s Mot., Dkt. 13, at 14–15.) The Court considers each of these medical opinions in turn.

### A. Consultative Examiner

Plaintiff first argues that the ALJ improperly assigned "little weight" to the opinion of her consultative examiner, Johanina McCormick, Ph.D. (*Id.* at 14.) In support of this argument, Plaintiff points to Dr. McCormick's observations that Plaintiff had "just started outpatient treatment for anxiety" (Tr. at 368), had a "dysphoric" affect (*id.* at 369), "fair" insight, and "poor" judgment (*id.* at 370). Plaintiff also highlights that Dr. McCormick deemed Plaintiff "moderately impaired" in both "maintaining a regular schedule" and "in performing complex tasks independently." (*Id.*)

The ALJ explained that he assigned little weight to the opinion of Dr. McCormick because it was "given after a one-time examination without benefit of the entirety of the medical evidence." (*Id.* at 38; *see also id.* at 371 (noting that appointment was for a consultative examination).) This rationale is in keeping with Second Circuit case law, as "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian*, 708 F.3d at 419; *see also Murphy v. Saul*, No. 17-CV-1757 (PKC), 2019 WL 4752343, at *3 (E.D.N.Y. Sept. 30, 2019) ("[C]onsultative exams are often brief, are generally performed without benefit or review of

claimant's medical history and, at best, only give a glimpse of the claimant on a single day." (quoting *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990))).

Thus, regardless of the extent to which Dr. McCormick's opinion supported the ALJ's RFC determination,[8] the Court finds that the ALJ did not act improperly by affording only "little weight" to Dr. McCormick's opinion.

### B. Treating Social Worker

Plaintiff next argues that the ALJ improperly assigned "little weight" to the opinion of her treating social worker, LMSW Laura Pearl, in violation of the treating physician rule. (Pl.'s Mot., Dkt. 13, at 14.)

"With respect to the nature and severity of a claimant's impairments, the SSA recognizes a treating physician rule[9] of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotations and alterations omitted). Under the treating physician rule, a treating source's opinion

---

[8] Furthermore, Dr. McCormick's report contains findings that support the conclusion that Plaintiff's mental impairments were not severe. Dr. McCormick found that Plaintiff could "follow and understand simple directions and instructions and perform simple tasks independently," and that Plaintiff was only "mildly impaired" in maintaining attention and concentration. (Tr. at 370.) Dr. McCormick described Plaintiff as "mildly impaired" in "appropriately dealing with stress" and "able to adequately relate with others." (*Id.*) While Dr. McCormick diagnosed Plaintiff with "[u]nspecified depressive disorder, provisional," Dr. McCormick's prognosis was that: "Results of the present evaluation appear to be consistent with psychiatric problems, but in itself does not appear to be significant enough to interfere with the claimant's ability to function on a regular basis." (*Id.*) Dr. McCormick recommended that Plaintiff "continue with psychiatric treatment" and undergo "vocational training and rehabilitation." (*Id.*)

[9] Although "[t]he current version of the [Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim, as the current regulations only "apply to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290, 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); *see also* 20 C.F.R. § 404.1520(c). Because Plaintiff's claim was filed on December 22, 2015, the treating physician rule applies in this action.

9

is given "controlling weight" so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). If the opinion of the treating physician is not given controlling weight, the ALJ must apply a number of factors in order to determine the opinion's proper weight. *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). These factors include: (i) the frequency of examination as well as the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating source's opinion; (iii) the extent to which the opinion is consistent with the record as a whole; (iv) whether the treating source is a specialist; and (v) other relevant factors. 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6).

In making his RFC determination, the ALJ discussed LMSW Pearl's opinion, noted that Pearl was "not an acceptable medical source," and concluded that her opinion was "inconsistent with the record" as well as with "her own treatment notes." (Tr. at 39.) As an initial matter, the Court notes that the ALJ was correct in finding that LMSW Pearl was not an acceptable medical source. *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (including "licensed clinical social workers" in list of "[m]edical sources who are not 'acceptable medical sources'"). The opinions of non-acceptable medical sources are not eligible for "controlling weight," although they may still be given some weight according to the factors outlined in 20 C.F.R. § 404.1527(c). *See Monette v. Colvin*, 654 F. App'x 516, 518 (2d Cir. 2016) (summary order) (citing 20 C.F.R. §§ 404.1513(a), (d)(1); §§ 404.1527(a)(2), (c); SSR 06–03p, 2006 WL 2329939, at *4–5).

The ALJ also correctly found that LMSW Pearl's opinion—that Plaintiff suffered from a "moderate limitation" with respect to social functioning—was inconsistent with both LMSW Pearl's own treatment notes and the record. The administrative record contains two sets of LMSW

10

Pearl's treatment notes.[10] First, on December 13, 2017, Plaintiff was seen at Catholic Charities Neighborhood Services for a mental status exam with LMSW Pearl.[11] (Tr. at 442–53.) Plaintiff was observed to have an unkempt appearance, anxious mood, and affect congruent with mood, but otherwise exhibited a cooperative attitude; clear, coherent, and talkative speech; normal psychomotor activity; and goal-directed thought processes. (*Id.* at 442–43.) LMSW Pearl found that Plaintiff had impaired recent memory but unimpaired remote memory (*id.* at 444), and recommended individual and group psychotherapy as well as a psychiatric assessment (*id.* at 451). LMSW Pearl also noted that Plaintiff had experienced "command hallucinations for over 20 years" and that Plaintiff stated it was "not difficult" to ignore them. (*Id.* at 447.) LMSW Pearl diagnosed Plaintiff with PTSD and generalized anxiety disorder. (*Id.* at 452, 457.) More than two months later, on February 21, 2018, LMSW Pearl completed a Mental Impairment Questionnaire, in which she opined that Plaintiff had a "moderate" limitation in "interacting with others," but was otherwise able to function outside of the home, did not require significant changes in her medication or treatment, and had experienced no episodes of decompensation. (*Id.* at 599–603.) LMSW Pearl

---

[10] In addition to these two sets of notes, a report dated January 10, 2018 shows that Plaintiff received a Mental Health Care Utilization Review, in which it was deemed "necessary to help [Plaintiff] manage symptoms [sic] of voice hearing and anxiety." (*Id.* at 455.) This report also noted that treatment might not be required if Plaintiff "secure[d] adequate housing and [a] source of income." (*Id.*) It is not clear from the record whether LMSW Pearl conducted this review, as David Casareno, LCSW, signed off on this portion of the report. (*Id.* at 463.) However, LMSW Pearl appears to have signed off on Plaintiff's three-month longitudinal treatment plan at Catholic Charities, discussed *infra*. (*See id.* at 468.)

[11] This was Plaintiff's third therapy appointment at Catholic Charities. (Tr. at 433.) At this time, Plaintiff was assigned to a psychiatrist and scheduled for an appointment with him on January 17, 2018. (*Id.*) Plaintiff was either instructed or intended to "return for therapy" on December 27, 2017. (*Id.*) Plaintiff appears to have been seen at Catholic Charities as early as November 27, 2017. (*Id.* at 599.) By June 5, 2018, Catholic Charities had closed Plaintiff's case due to "missed appointments on 4/24 and 5/25." (*Id.* at 21.)

also noted that Plaintiff had only a "mild" degree of limitation in "understanding, remembering, or applying information." (*Id.* at 600.)

In assigning her opinion "little weight," the ALJ concluded that LMSW Pearl's finding of "moderate" limitation with regard to Plaintiff's social functioning[12] was both internally inconsistent and inconsistent with the record. (*Id.* at 39.) The Court agrees. LMSW Pearl had otherwise found Plaintiff to have a "cooperative attitude" (*id.* at 442), and Dr. McCormick's opinion, even given the little weight it merits, also noted that Plaintiff was "able to adequately relate with others" (*id.* at 370). Plaintiff herself told Dr. McCormick that Plaintiff "socialize[d] at church" and maintained a "close relationship with her son." (*Id.*) Furthermore, the Administrative Transcript includes records from Plaintiff's treating physicians, who reported good interactions with Plaintiff in multiple examinations. One physician, Emmanuel O. Fashakin, M.D., noted that Plaintiff had "good memory and speech" on October 6 and 20, 2015 (*id.* at 342, 347); December 1, 2015 (*id.* at 290); and March 8, 2016 (*id.* at 338). On October 20, 2015, Dr. Fashakin determined that Plaintiff had "no nervousness, no tension, good mood." (*Id.* at 347.) Treating neurologist Nurkia A. Mihu, M.D., noted that Plaintiff had "good recent and remote memory" on February 21, 2017 (*id.* at 419) and intact "registration and recall" on May 19, 2017 (*id.* at 421).

C. **State Agency Psychological Consultant**

In making his RFC determination, the ALJ also noted that he gave "greater weight to the opinion of the State agency psychological consultant who had more of the file to examine [than

---

[12] LMSW Pearl's opinion with regard to the other areas of functioning—(1) understanding, remembering, or applying information; (3) concentration, persistence, or pace; and (4) adapting or managing oneself, *see* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3)—is consistent with the other evidence of record to the extent she found Plaintiff to have only mild limitation in understanding, remembering, or applying information. (*Id.* at 600.) LMSW Pearl did not offer an assessment of the other two areas in the February 2018 Questionnaire. (*See id.* at 600–01.)

did Dr. McCormick, Plaintiff's consultative examiner,] as it is more consistent with the evidence showing mild limitations." (*Id.* at 38.) The state agency psychological consultant[13] opined in an April 21, 2016 report that Plaintiff had only "mild" restriction of activities of daily living, "mild" difficulties in maintaining social functioning, and "mild" difficulties in maintaining concentration, persistence, or pace. (*Id.* at 97.) Dr. Shapiro added that there was "no evidence for any psychiatrically based limitations in functioning beyond a mild degree." (*Id.*)

### D. Plaintiff's Self-Reported Functioning

Plaintiff's self-reported activities of daily functioning further bolster the ALJ's conclusion as to the severity of her mental impairments. In her testimony at the March 2018 hearing, Plaintiff commented very little on her mental impairments, stating only that she did not really need to see a psychiatrist,[14] that her emotional condition affected her concentration, and that she forgot things a lot. (*Id.* at 75.) Plaintiff otherwise described taking public transportation, doing laundry, and shopping for groceries, mentioning only her physical impairments as hampering her ability to undertake these activities. (*Id.* at 74–75.)

\* \* \*

A review of the entire record with regard to Plaintiff's mental impairments demonstrates that the limitations discussed in her RFC are supported by substantial evidence, which suggests that Plaintiff's mental impairments were correctly determined to be non-severe. Indeed, "the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor v.*

---

[13] This individual is identifiable in the record only as "S. Shapiro PhD." (*See id.* at 97.)

[14] Plaintiff stated before the ALJ that, "The reason I see the psychiatrist is because they feel that I'm going through a lot. . . . So I'm saying I don't really probably need a psychiatrist, but they're saying I do because I need, you know, therapy." (*Id.* at 75.)

*Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Here, the Commissioner examined all of the record evidence pertaining to Plaintiff's mental impairments and correctly weighed the opinions before him according to the applicable legal standards. Furthermore, the Commissioner properly documented his consideration of the evidence relevant to Plaintiff's mental impairments both at step two and during the RFC determination. Given the "very deferential standard" of substantial evidence review, *Brown v. Colvin*, 73 F. Supp. 3d 193, 198 (S.D.N.Y. 2014) (internal quotation omitted), the Court concludes that the ALJ did not err in his finding that Plaintiff's mental impairments were not severe.

## CONCLUSION

For the reasons set forth above, the Court denies Plaintiff's motion for judgment on the pleadings and grants the Commissioner's cross-motion in its entirety. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 12, 2020
       Brooklyn, New York